UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE,<br><br>                     Plaintiff,<br><br>    – against –<br><br>OLGA PLETIN and VYACHESLAV SULEYMANOV,<br><br>                     Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, Jane Doe[1] ("Ms. Doe" or "Plaintiff"), by and through her counsel, The Legal Aid Society and Freshfields Bruckhaus Deringer US LLP, for her Complaint against Defendant Olga Pletin and Defendant Vyacheslav Suleymanov (together, "Defendants"), respectfully alleges upon knowledge as to herself and her acts, and upon information and belief as to all other matters, as follows:

**PRELIMINARY STATEMENT**

1.      Using false representations of adequate pay and reasonable working conditions, Defendants knowingly and willfully lured Ms. Doe from Russia to the United States to be employed as a live-in domestic worker. Defendant Suleymanov also subjected Ms. Doe to sexual harassment and abuse, and used coercion and blackmail to prevent her from escaping. Defendants subjected Ms. Doe to harsh working conditions, psychological coercion and sexual harassment and abuse, in violation of anti-trafficking laws, federal and state employment laws, and common law.

2.      Prior to her employment in the United States by Defendants, Ms. Doe worked as a domestic worker in Russia to support herself and her son. In December 2015, Defendants

---

[1]      Ms. Doe has filed a motion to proceed by pseudonym contemporaneously with this Complaint.

knowingly and willfully lured Ms. Doe to move to the United States to work for them as a live-in nanny to their (then) second grade aged daughter by using false representations of a specific wage and reasonable working conditions.

3.        While working for Defendants from on or about December 2015 to on or about March 2016, Ms. Doe generally worked at least 14 hours per day with a short break on weekdays while the daughter was in school. Ms. Doe was only permitted to take two days of rest during her employment with Defendants, despite their prior representations that she would receive one day off per week.

4.        Defendants failed to adequately compensate Ms. Doe for her work. For approximately the first two months of her employment, Ms. Doe was paid 5000 Russian rubles (approximately $75) per day. For the final month of her employment, Defendants failed to compensate Ms. Doe at all. Overall, Ms. Doe was compensated roughly $3.50 per hour that she worked for Defendants. Defendants also refused to pay Ms. Doe in U.S. Dollars and instead sent these payments to Ms. Doe's bank account in Russia, to which she did not have access in the United States.

5.        While Ms. Doe worked for Defendants, they exercised complete control over her living and working conditions. Defendants constantly surveilled Ms. Doe using cameras positioned throughout their residence, and prevented her from leaving Defendants' house unaccompanied.

6.        Beginning in January 2016, Defendant Suleymanov regularly sexually harassed and abused Ms. Doe, using his significant power over Ms. Doe to coerce her into unwanted sexual contact and non-consensual sexual acts. After an instance in March 2016, in which Ms. Doe was able to successfully avoid Defendant Suleymanov's sexual demands, he demanded that

she leave Defendants' residence and employ. Ms. Doe refused, as she was not paid her wages for that month and did not have any money or other place to go. Shortly thereafter, Defendants terminated Ms. Doe's employment.

7.    Ms. Doe suffered grave mistreatment under Defendants' control and now seeks redress for harm caused to her by Defendants' unlawful conduct under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (the "TVPA"), the Fair Labor Standards Act (the "FLSA"), the New York Labor Law, the New York State Human Rights Law, and common law.

## JURISDICTION AND VENUE

8.    This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiff brings claims under the FLSA, 29 U.S.C. § 201 *et seq.*, and the TVPA, 18 U.S.C. § 1595(a).

9.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims form part of the same case or controversy under Article III of the United States Constitution.

10.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred in this district.

11.    This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

12.    At all times relevant to this action, Ms. Doe worked for Defendant Pletin and her husband Defendant Suleymanov in their residence in Great Neck, New York.

13.     During the course of Ms. Doe's employment with Defendants in the United States, Defendant Suleymanov resided in Defendants' residence in Great Neck, New York, and briefly stayed at Defendants' residence in Miami, Florida. Defendant Pletin briefly stayed at Defendants' residence in Great Neck, New York, and also maintained residences in Miami, Florida, and Russia.

14.     On December 9, 2015, Ms. Doe was admitted to the United States on a B-2 visa that, upon information and belief, was paid for and obtained by Defendants or agents working on behalf of Defendants, for the purpose of allowing Ms. Doe to work for Defendants in the United States. Ms. Doe then resided in Great Neck, New York from on or about December 9, 2015 to on or about March 12, 2016. Afterwards, Ms. Doe resided and continues to reside in New York City.

15.     At all times relevant to this action, Ms. Doe was a domestic worker employed by Defendants as defined by the FLSA and New York Labor Law.

## STATEMENT OF FACTS

16.     Ms. Doe was born in Tajikistan. When she was in her 20s, she and her family moved to Russia, where Ms. Doe resided until 2015. From 2012 until December 2015, Ms. Doe spent most of her time in Moscow where she worked. Ms. Doe speaks Russian as her native language and has limited proficiency in English.

17.     Ms. Doe has one son, who was diagnosed in 2013 with a cerebral cyst. While living in Russia, Ms. Doe worked as a tutor, author of children's poetry, and nanny to support herself and her son.

## Recruitment and Trafficking to the United States

18.     In November 2015, Ms. Doe contacted the Russian employment agency Ayushka, seeking a new job. Ms. Doe was referred to a job for Defendant Pletin, who interviewed Ms. Doe in Russia and offered her a position as a nanny in the United States to her (then) second grade aged daughter.

19.     Ms. Doe was told in conversations with Defendant Pletin and Defendant Pletin's secretary, and in statements made on Defendant Pletin's behalf by employees of Ayushka, that she would earn 5000 Russian rubles (approximately $75) per day for her work. Ms. Doe was also told that she would work reasonable hours and under reasonable working conditions for six days per week with one day off.

20.     However, Ms. Doe was never provided with an employment contract between Ms. Doe and Defendant Pletin.  Instead, Ayushka provided Ms. Doe with a copy of the contract between Ayushka and Defendant Pletin, and was told that the lack of contract between her and Defendant Pletin was standard practice. Ms. Doe reasonably believed that she would work and be paid according to the terms of the contract between Defendant Pletin and Ayushka.  These terms included that: (a) the nanny would be paid 5000 rubles per day; (b) the nanny would work six (6) days per week and receive one (1) day off per week; (c) the nanny would be responsible for the full care, development and accompaniment of the Defendants' child; and (d) that the performance of any additional tasks, and the amount and payment for those tasks, were to be made "by agreement."

21.     Ms. Doe was not provided at this point or at any time during her employment with Defendants, either orally or in writing, information about her rights as a domestic worker or

about the federal and state labor laws applicable to her employment, nor was Ms. Doe given a hiring notice explaining her rate of pay.

22.     Upon information and belief, Defendant Pletin facilitated and paid for Ms. Doe to obtain a B-2 tourist visa to enter the United States in order to work for Defendant Pletin and Defendant Suleymanov as their daughter's live-in nanny. Ms. Doe worked with Defendant Pletin's secretary to fill out the visa application, and submitted this application with the help of Defendant Pletin's secretary and her tourist agency.

23.     Upon information and belief, Defendant Suleymanov coordinated with Defendant Pletin to hire Ms. Doe as their daughter's live-in nanny, including facilitating her travel to and arrival in the United States. Defendant Pletin paid for Ms. Doe to fly to New York on or about December 9, 2015, to begin her work for Defendants.

### Forced Labor, Abuse, and Isolation in the United States

24.     Upon her arrival to the United States, Ms. Doe was met by Defendant Suleymanov and driven by him to Defendants' home in Great Neck, New York. This was Ms. Doe's first time in the United States.

25.     When she arrived at Defendants' residence in Great Neck, Ms. Doe learned that her bedroom (that she was to share with Defendants' daughter), along with several other rooms in the house, had cameras. As a result, Ms. Doe was constantly under surveillance while she resided in Defendants' house. Ms. Doe was very distressed at being constantly surveilled and having no privacy. From time to time during her stay in Defendants' home, Defendants' grown sons would come into Ms. Doe's bedroom at night to watch her sleep, further invading her privacy.

26.     Following her arrival, Ms. Doe was made to work from approximately 7:00 AM each morning to approximately 10:00 or 11:00 PM, or as late as midnight, each night. Ms. Doe's responsibilities included taking Defendants' child to school, caring for her, cooking her meals, helping her with homework, cleaning, taking care of Defendants' dog, grocery shopping, and doing laundry. Ms. Doe was expected to rise before the child each day, including weekends, and to stay up until after the child went to sleep, and would only receive a short break of an hour or an hour and a half when the daughter was in school. Ms. Doe was expected to remain in Defendants' residence while their daughter was at school and was prevented from leaving the house except to accompany their daughter.

27.     In late December 2015, Ms. Doe travelled with Defendant Suleymanov and his daughter to Defendants' residence in Miami, Florida for the New Year's holiday. Defendant Pletin was also present in Miami during this time.

28.     In Miami, in addition to looking after Defendants' daughter, Ms. Doe was made to cook, clean, and otherwise prepare for Defendants' New Year's party for 30 guests. As a result, Ms. Doe was forced to work for approximately four days with barely any rest. Despite prior representations she would receive one day off per week, Defendants had not allowed Ms. Doe any days off until this point. Ms. Doe collapsed following the New Year's party and only then was allowed by Defendants one day of rest.

29.     In early January 2016, Ms. Doe, Defendant Suleymanov, and his daughter returned to Great Neck, New York. Ms. Doe was not provided any days off until on or around mid-February 2016. Following a period of two weeks during which Defendants' daughter was ill and Ms. Doe worked around the clock to care for her, Ms. Doe was given one day off.

**Defendant Suleymanov Sexually Harasses and Abuses Ms. Doe**

30.     Defendant Suleymanov began sexually harassing and abusing Ms. Doe in or around December 2015. From or around early December 2015 to March 12, 2016, Defendant Suleymanov also exposed Ms. Doe to repeated, inappropriate, vulgar, and offensive comments, which were unwanted and unwelcome.

31.     In January 2016, Defendant Suleymanov had sex with Ms. Doe without her consent.

32.     From January 2016 to March 2016, Defendant Suleymanov regularly sexually harassed and abused Ms. Doe. Defendant Suleymanov used threats of terminating Ms. Doe's employment and damaging her reputation to coerce Ms. Doe into further unwanted sexual contact and non-consensual sex acts.

33.     Defendant Suleymanov also persuaded Ms. Doe to write him sexual messages on Viber, an instant messaging system, and later made her delete messages sent to her on Viber that showed him pressuring her into having sex with him. Defendant Suleymanov also forced Ms. Doe to watch sexually explicit videos through threats and coercion, and would intentionally leave his bedroom door open when he was naked and Ms. Doe was nearby.

34.     During this time, Defendant Suleymanov made it clear that, if Ms. Doe rejected his sexual advances or complained to anyone, he would eject her from their residence and fire her. He also threatened to disclose to others the sexual messages he persuaded Ms. Doe into exchanging with him, and to give her a bad recommendation with her employment agency in Moscow such that she would be unable to find another job. On more than one occasion, Defendant Suleymanov attempted to force Ms. Doe into performing sexual acts.

35.     During this time, Ms. Doe was wholly dependent upon Defendant Suleymanov for food and shelter. She did not know anyone in the United States other than individuals she had

met through Defendants. Ms. Doe was fearful that if she refused Defendant Suleymanov or failed to "play along" with his wishes, she would lose her job and have no means of supporting herself or returning to her son in Russia.

36.    On or around early February 2016, Defendant Suleymanov, in anticipation of a visit from his wife Defendant Pletin, tried to convince Ms. Doe to leave her employment before receiving payment. When Ms. Doe later insisted on remaining until she was paid for her employment to date, Defendant Suleymanov's sexual harassment and abuse continued.

37.    Ms. Doe found Defendant Suleymanov's sexual harassment and forced sexual contacts to be immensely painful, degrading and humiliating. These encounters have caused Ms. Doe stress, fear, embarrassment, and discomfort, and Ms. Doe has undergone (and continues to undergo) treatment for the harms she suffered as a result.

38.    Ms. Doe no longer wished to have contact with Defendant Suleymanov following these unwanted sexual actions, and no longer wished to work for the family. However, because of Mr. Suleymanov's threats against her and because she was prevented from having any money of her own, she reasonably believed that she had no way to escape the situation, would have her reputation and future employment opportunities destroyed if she tried, and had no choice but to stay and continue to endure his sexual harassment and abuse.

39.    At no time was Ms. Doe advised of her rights with respect to any employment laws, either orally or through written postings.

**Ms. Doe's Escape**

40.    On or around early March 2016, Defendant Suleymanov informed Ms. Doe that she would now have to do all of the housework, but promised to pay her $500 in U.S. dollars for

the extra work. On or around March 12, 2016, Ms. Doe asked Defendant Suleymanov for the extra payment he promised, but he refused to pay her anything.

41.     Later that day, when Ms. Doe had left to take Defendants' daughter to an appointment, Defendant Suleymanov messaged Ms. Doe on Viber asking why she had taken his house keys. When Ms. Doe returned with the child, Defendant Suleymanov began cursing at Ms. Doe and kicking her things and ordered her out of the house, claiming he was angry because she had taken his house keys.

42.     Defendants' daughter informed Defendant Pletin that Ms. Doe had been removed from the house. At Defendant Pletin's request, Defendant Pletin's friend picked up Ms. Doe and arranged for her to stay with acquaintances in New York City who loaned Ms. Doe money to buy basic necessities.

43.     On March 15, 2016, Defendant Pletin called Ms. Doe from Moscow and confirmed to Ms. Doe that she was fired, and refused to pay for her last month of work, extra hours worked, or a ticket back to Russia.

44.     Following her escape from Defendants' home, Ms. Doe filed a complaint at the New York State Department of Labor for wages owed and a charge for discrimination with the New York State Division of Human Rights. The New York State Department of Labor's investigation into Ms. Doe's complaint is closed. Ms. Doe's charge filed with the New York State Division of Human Rights was dismissed on September 23, 2016 on grounds of administrative convenience.

45.     On or around April 27, 2016, Defendant Pletin's friend called Ms. Doe to warn her that Defendants were angry at Ms. Doe for attempting to recover the wages that she was owed.

46. Ms. Doe currently resides in New York City.

**Defendants' Violations of Anti-Trafficking Statutes, Federal and New York Employment Laws, and Sexual Harassment Laws**

47. From the time Ms. Doe arrived in the United States on December 9, 2015, to when she was fired on March 15, 2016, Defendants only paid her twice: (*i*) on or around January 20, 2016, Ms. Doe was paid 202,080.67 rubles, which was equivalent to approximately $2,640; and (*ii*) on or around February 19, 2016, Ms. Doe was paid 155,000 rubles, which was equivalent to approximately $2,005. Ms. Doe has not been compensated for her work from February 19, 2016 to March 15, 2016.

48. Ms. Doe was paid via transfers directly to her Russian bank account, to which she did not have access in the United States. Ms. Doe asked Defendants to pay a portion of her wages in dollars, but they refused. As a result, Ms. Doe did not have access to any money of her own while working for Defendants, with the exception of small amounts that she was able to use, and which were deducted from her salary.

49. Overall, Ms. Doe was compensated approximately $4,645 for approximately 1,320 hours of work. She was therefore paid roughly $3.50 per hour she worked for Defendants. Ms. Doe was not given receipts or any kind of wage statements for these payments.

50. Defendants never gave Ms. Doe any written employment contract or statement describing her employment, including any statement listing her wages, hours, or any terms of employment. Ms. Doe had no notice of her rights and, as a foreigner working in the United States with limited English ability, was unaware of the FLSA or the New York Labor Law and any of their minimum wage or overtime provisions.

## FIRST CLAIM FOR RELIEF

### Involuntary Servitude in Violation of 18 U.S.C. §§ 1584, 1595

### (Against Both Defendants)

51.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

52.     Plaintiff brings this claim for relief under both the Thirteenth Amendment to the United States Constitution and 18 U.S.C. § 1584, which prohibit involuntary servitude. There is an implied right to bring a private cause of action to address violations of the Thirteenth Amendment, and an express right to bring a civil cause of action for violations of 18 U.S.C. § 1584 in 18 U.S.C. § 1595.

53.     Under 18 U.S.C. § 1584, it is unlawful to "knowingly and willfully hold[] to involuntary servitude . . . or bring[] within the United States any person so held."

54.     "Involuntary servitude" includes "a condition of servitude induced by means of . . . any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint; or . . . the abuse or threatened abuse of the legal process." 22 U.S.C. § 7102(6).

55.     In violation of 18 U.S.C. § 1584, Defendants brought Ms. Doe to the United States for the purpose of involuntary servitude and knowingly and willfully subjected Ms. Doe to a condition of involuntary servitude for over three months in the United States by leading her to believe she would suffer serious reputational, financial, and/or legal harm if she did not continue to work for Defendants. Defendants further held Ms. Doe in a condition of involuntary servitude by severely limiting her access to money, placing her under constant surveillance, and confining her in their home.

56.     Defendants also abused the legal process to control Ms. Doe by procuring and presenting fraudulent documents to the U.S. Embassy to obtain her visa.

57.     Defendants used fraudulent misrepresentations, threats, abuse, coercion and intimidation to hold Ms. Doe in their employment and forced her to work without paying her the compensation required by law.

58.     Ms. Doe brings this claim for relief pursuant to the private right of action granted by 18 U.S.C. § 1595.

59.     As a direct and proximate result of Defendants' actions, Ms. Doe has suffered damages in an amount to be established at trial.

60.     Ms. Doe is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Forced Labor in Violation of 18 U.S.C. §§ 1589, 1595

### (Against Both Defendants)

61.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

62.     Under 18 U.S.C. § 1589(a), it is unlawful to "knowingly provid[e] or obtain[] the labor or services of a person . . . (1) by means of force, threats of force, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

63.     As alleged herein, Defendants knowingly provided and/or obtained Ms. Doe's services as a domestic worker by means of force, threats of force, and/or threats of physical restraint, serious harm and/or threats of serious harm, abuse of law or legal process and/or through a scheme to make Ms. Doe believe that she would suffer serious harm if she did not continue to provide services to Defendants.

64.     Defendants knowingly provided and/or obtained Ms. Doe's services by requiring her to remain within the residence, monitoring her movements within the residence, restricting her access to money in the United States, blackmailing her and threatening her reputation such as to prevent her from earning a livelihood in the future, and subjecting her to physical, sexual, and verbal abuse.

65.     Defendants knowingly implemented a scheme, plan, or pattern intended to cause Ms. Doe to believe that if she did not perform domestic services for them she would suffer serious harm by requiring her to remain within the residence, monitoring her movements within the residence, restricting her access to money in the United States, blackmailing her and threatening her reputation such as to prevent her from earning a livelihood in the future, and subjecting her to physical and verbal abuse.

66.     Under 18 U.S.C. § 1589(b), it is unlawful to "knowingly benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in Section 1589(a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means."

67.     Defendants knowingly benefited, financially or by receiving value, from participation in a venture which they knew or should have known engaged in violations of 18 U.S.C. § 1589, namely Ms. Doe's services for inadequate or no compensation.

68.     Ms. Doe brings this claim for relief pursuant to 18 U.S.C. § 1595.

69.     As a direct and proximate result of Defendants' actions, Ms. Doe has suffered damages in an amount to be established at trial.

70.     Ms. Doe is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

### Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of 18 U.S.C. §§ 1590, 1595

### (Against Both Defendants)

71.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

72.     Under 18 U.S.C. § 1590(a), it is unlawful to "knowingly recruit[], harbor[], transport[], provid[e], or obtain[] by any means, any person for [peonage, slavery, involuntary servitude, or forced labor]."

73.     Defendants knowingly recruited, transported, harbored, provided and/or obtained Ms. Doe, bringing her to the United States for the purpose of involuntary servitude and forced labor in violation of 18 U.S.C. §§ 1589 and 1592, and therefore violated 18 U.S.C. § 1590.

74.     Defendants knowingly violated the prohibitions against involuntary servitude and forced labor set forth in 18 U.S.C. §§ 1584(a) and 1589(a) and (b).

75.     Ms. Doe brings this claim for relief pursuant to 18 U.S.C. § 1595.

76.     As a direct and proximate result of Defendants' actions, Ms. Doe has suffered damages in an amount to be determined at trial.

77.     Ms. Doe is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF

### Benefitting Financially from Trafficking in Persons in Violation of 18 U.S.C. §§ 1593A, 1595

### (Against Both Defendants)

78.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

79.     18 U.S.C. § 1593A makes it unlawful to "knowingly benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in any activity in violation of section … 1595(a), knowing or in reckless disregard of the fact that the venture has engaged in such violation" to the same extent "as a completed violation of such section."

80.     Defendants knowingly benefitted financially or by receiving something of value, namely Ms. Doe's domestic worker services, from participation in a venture that engaged in activities in violation of 18 U.S.C. § 1595(a) and either knew or was in reckless disregard of the violation of this provision.

81.     Ms. Doe brings this claim for relief pursuant to 18 U.S.C. § 1595.

82.     As a direct and proximate result of the conduct of Defendants, Ms. Doe has suffered injuries to her person and other damages.

83.     Ms. Doe is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF

### Attempt to Violate 18 U.S.C. §§ 1584, 1589, 1590, 1594, 1595

### (Against Both Defendants)

84.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

85.     In violation of 18 U.S.C. § 1594(a), Defendants attempted to violate §§ 1584, 1589 and 1590 by bringing Ms. Doe to the U.S. for the purpose of involuntary servitude and knowingly and willfully subjected Ms. Doe to a condition of involuntary servitude for over three months in the U.S. in violation of 18 U.S.C. § 1584, by agreeing to obtain or provide Ms. Doe's services in violation of 18 U.S.C. § 1589, and by trafficking Ms. Doe in violation of 18 U.S.C. § 1590.

86.     Ms. Doe brings this claim for relief pursuant to 18 U.S.C. § 1595.

87.     As a direct and proximate result of the conduct of Defendants, Ms. Doe has suffered injuries to her person and other damages.

88.     Ms. Doe is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF

### Conspiracy to Violate 18 U.S.C. §§ 1589, 1590, 1594, 1595

### (Against Both Defendants)

89.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

90.     18 U.S.C. § 1594(b) makes it unlawful to "conspire[] with another to violate section … 1589, [or] 1590."

91.    Defendants conspired to violate 18 U.S.C. §§ 1589 and 1590 by agreeing to obtain or provide Ms. Doe's services in violation of 18 U.S.C. § 1589, and trafficking Ms. Doe in violation of 18 U.S.C. § 1590. Defendants came to an understanding to commit these violations through the course of their dealings.

92.    Ms. Doe brings this claim for relief pursuant to 18 U.S.C. § 1595.

93.    As a direct and proximate result of the conduct of Defendants, Ms. Doe has suffered injuries to her person and other damages.

94.    Ms. Doe is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

## SEVENTH CLAIM FOR RELIEF

### Fair Labor Standards Act (FLSA) Minimum Wage Violation
### 29 U.S.C. § 201 *et seq.*

### (Against Both Defendants)

95.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

96.    The FLSA, 29 U.S.C. § 206(f), provides that any domestic service employee employed in one or more households and employed more than eight hours per week shall be paid wages at the federal minimum wage rate during the period of employment. For all periods of Ms. Doe's employment, the federal minimum wage rate was $7.25 per hour. 29 U.S.C. § 206(a).

97.    In all periods of Ms. Doe's employment, Defendants knowingly paid Ms. Doe an hourly rate far less than the federal minimum wage, in violation of 29 U.S.C. §§ 206 and 216.

98.    Defendants' failure to pay required compensation was willful within the meaning of 29 U.S.C. § 255(a).

99.     Defendants did not act in good faith when they failed to comply with federal minimum wage law.

100.    Defendants' willful and intentional failure to pay Ms. Doe the minimum wage violates 19 U.S.C. § 201 *et seq.* and U.S. Department of Labor regulations. Ms. Doe is entitled to an award of damages for unpaid minimum wages in amounts equal to the proper federal minimum wage she should have been paid, prejudgment interest, liquidated damages, attorneys' fees, and costs.

### EIGHTH CLAIM FOR RELIEF

**New York State Minimum Wage Violations**
**N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.***

**(Against Both Defendants)**

101.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

102.    The New York Labor Law requires employers to pay a minimum hourly wage for covered employees in New York State. N.Y. Lab. L. § 652; 12 N.Y.C.R.R. § 142-2.1.

103.    At all times relevant to this action, Ms. Doe was an employee covered by state minimum wage law. N.Y. Lab. L. §§ 2, 651-652; 12 N.Y.C.R.R. § 142-2.1.

104.    At all times relevant to this action, Defendants employed Ms. Doe within the meaning of New York Labor Law §§ 2, 651.

105.    At all times relevant to this action, Defendants were employers within the meaning of New York Labor Law. N.Y. Lab. L. §§ 2, 651.

106.    In all periods of Ms. Doe's employment, Defendants failed to pay Ms. Doe the proper minimum wage, as required by New York state law. N.Y. Lab. L. § 650 *et seq.*

107.    During Ms. Doe's employment, the New York State minimum wage was $8.75 per hour between December 9, 2015 and December 31, 2015, and $9.00 per hour from January 1, 2016 to March 2016. N.Y. Lab. L. § 652.

108.    Defendants' failure to pay Ms. Doe the minimum wage was willful and/or not in good faith.

109.    Ms. Doe is entitled to an award of damages for unpaid minimum wages in an amount equal to the proper state minimum wage she should have been paid, liquidated damages, prejudgment interest, attorneys' fees, and costs.

## NINTH CLAIM FOR RELIEF

**New York State Overtime Violation**
**N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.*, 12 N.Y.C.R.R. § 142-2.2**

**(Against Both Defendants)**

110.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

111.    Defendants failed to pay Ms. Doe overtime pay for her work in excess of forty-four (44) hours per week, as required for a residential employee in violation of New York Labor Law §§ 190 *et seq.* and 650 *et seq.* and New York Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.2.

112.    Defendants' failure to pay Ms. Doe overtime pay was willful and/or not in good faith.

113.    Ms. Doe is entitled to an award of damages for overtime pay for each hour she worked over forty-four (44) hours per week in an amount equal to the proper overtime pay she should have been paid, liquidated damages, prejudgment interest, attorneys' fees, and costs.

## TENTH CLAIM FOR RELIEF

**New York Labor Law, Spread-of-Hours Pay**
**N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.*, 12 N.Y.C.R.R. § 142-2.4**

**(Against Both Defendants)**

114.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

115.     Defendants failed to pay Ms. Doe an extra hour's pay at the rate of the minimum wage for every day that she worked in which the interval between her start and end time exceeded ten hours, in violation of N.Y. Lab. L. §§ 190 *et seq.* and New York State Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.4.

116.     Defendants' failure to pay Ms. Doe spread-of-hours pay was willful and/or not in good faith.

117.     Ms. Doe is entitled to an award of an extra hour's pay for every day that she worked in excess of ten hours, liquidated damages, prejudgment interest, attorneys' fees, and costs.

## ELEVENTH CLAIM FOR RELIEF

**New York Labor Law, Frequency of Payment Violation**
**N.Y. Lab. L. § 191(1)(a)(i)**

**(Against Both Defendants)**

118.     Plaintiff realleges and incorporates each and every allegation contained in the above paragraphs as if fully set forth herein.

119.     New York Labor Law requires employers to pay manual laborers each week. N.Y. Lab. L. § 191(1)(a)(i).

120.    With the exception of two weeks, Ms. Doe did not receive payment of wages within seven calendar days after the end of the week in which the wages were earned, in violation of N.Y. Lab. L. § 191(1)(a)(i).

121.    Defendants' failure to pay Ms. Doe the promised wages with lawful frequency was willful and/or not in good faith.

122.    Ms. Doe is entitled to any underpayment suffered, prejudgment interest, liquidated damages, and attorneys' fees and costs.

## TWELFTH CLAIM FOR RELIEF

### New York Labor Law, Notice Violation
### N.Y. Lab. L. § 195

### (Against Both Defendants)

123.    Plaintiff realleges and incorporates each and every allegation contained in the above paragraphs as if fully set forth herein.

124.    Employers are required to provide, at the time of hire, "the rate or rates of pay and the basis of the rate, whether they are paid by the hour, shift, day, week, salary, piece, commission or other and allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances," among other things. N.Y. Lab. L. § 195(1)(a). This notice must be given in the employee's primary language. *Id.*

125.    Employers must obtain and preserve for six years written acknowledgement that such notice was provided. *Id.*

126.    Defendants failed to provide Ms. Doe the notice of her rights upon hire and wage statements that complied with New York Labor Law. Defendants failed to obtain written acknowledgement from Plaintiff of notice.

127.    Defendants' failure to provide Ms. Doe notice of her rate of pay and legally adequate wage statements was willful and not in good faith.

128.    Ms. Doe is entitled to damages of fifty dollars for each day that she did not receive the notice required by N.Y. Lab. L. § 195(1)(a), attorneys' fees and costs, together not to exceed $5,000, and injunctive and declaratory relief. *Id.* at § 198(1-b).

### THIRTEENTH CLAIM FOR RELIEF

**New York Labor Law, Wage Notice Violation**
**N.Y. Lab. L. § 195**

**(Against Both Defendants)**

129.    Plaintiff realleges and incorporates each and every allegation contained in the above paragraphs as if fully set forth herein.

130.    Employers are required to "furnish each employee with a statement with every payment of wages listing . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day week, salary, piece, commission or other; gross wages, deductions, allowances, if any" among other things. *Id.* at § 195(3).

131.    Defendants failed to provide Ms. Doe the notice of her rights upon hire and wage statements that complied with New York Labor Law.

132.    Defendants' failure to provide Ms. Doe notice of her rate of pay and legally adequate wage statements was willful and not in good faith.

133.    Ms. Doe is entitled to damages of two-hundred and fifty dollars for each week that she did not receive the notice required by N.Y. Lab. L. § 195(3)(a), attorneys' costs and fees, together not to exceed $5,000 and injunctive and declaratory relief. *Id.* at § 198(1-d)

## FOURTEENTH CLAIM FOR RELIEF

### New York State Failure to Pay Promised Wages
### N.Y. Lab. L. §§ 190 *et seq.*

### (Against Both Defendants)

134.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

135.    The New York Labor Law requires employers to pay promised wages for every hour worked. N.Y. Lab. L. §§ 190, 191, *et seq.*

136.    For the period of Ms. Doe's employment, Defendants failed to pay Ms. Doe the promised wage of 5000 rubles (approximately $75) per day and the corresponding overtime rate for hours over forty-four (44) hours per week.

137.    Defendants' failure to pay Ms. Doe the promised wages was willful and/or not in good faith.

138.    Ms. Doe is entitled to her promised wages, liquidated damages, prejudgment interest, attorneys' fees and costs.

## FIFTEENTH CLAIM FOR RELIEF

### Unjust Enrichment

### (Against Both Defendants)

139.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

140.    Plaintiff rendered services as a live-in domestic nanny and servant in good faith and with the expectation that she would be fairly compensated for such services.

141.    Defendants accepted those services and in turn failed to compensate Plaintiff for the reasonable and/or fair market value of her services.

142.    Defendants have been unjustly enriched at Plaintiff's expense.

143.    Defendants consciously or recklessly disregarded Plaintiff's rights.

144.    Equity and good conscience require restitution to Plaintiff for the reasonable value of these services.

145.    Plaintiff is therefore entitled to recover damages in an amount to be determined at trial.

## SIXTEENTH CLAIM FOR RELIEF

### Quantum Meruit (In the Alternative)

### (Against Both Defendants)

146.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

147.    Plaintiff rendered services as a live-in domestic servant, cook and nanny in good faith and with the expectation that she would be fairly compensated for such services.

148.    Defendants accepted those services and in turn failed to compensate Plaintiff for the reasonable and/or fair market value of her services.

149.    Defendants have benefited from these services at Plaintiff's expense.

150.    Defendants consciously and recklessly disregarded the Plaintiff's rights.

151.    Plaintiff should be compensated in quantum meruit in an amount to be proven at trial.

## SEVENTEENTH CLAIM FOR RELIEF

### Fraud

### (Against Both Defendants)

152.   Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

153.   During the time the Plaintiff worked for Defendants, Defendants intentionally and knowingly made false representations and material omissions of fact to Plaintiff regarding her labor and her rights under American law.

154.   Defendants induced Plaintiff to work for Defendants in the United States by representing to Plaintiff they would pay her for her labor at a rate of 5000 rubles (approximately $75) per day when, in fact, they had no intention of paying her at this rate for the entire period of her employment, and instead only paid her at this rate for a portion of her employment.

155.   On or around early March 2016, Defendant Suleymanov induced Plaintiff to continue to work for Defendants in the United States by telling her that he would pay her an additional amount in U.S. Dollars for her additional housework in the house, when, in fact, he had no intention of doing so.

156.   Defendants induced Plaintiff to stay with them and work for them for no wages, or for less than promised, knowing that Plaintiff would rely on their misrepresentations and intending that their misrepresentations would induce Plaintiff to continue to work for them.

157.   Plaintiff did in fact rely on Defendants' misrepresentations to her detriment and as a result was forced to work as a domestic servant for Defendants for little to no pay. Plaintiff's reliance on Defendants' threats and promises was reasonable given her extreme isolation and lack of knowledge about the American legal system.

158.    As a result of these misrepresentation and material omissions of fact made by Defendants, Plaintiff endured the physical and psychological abuse that accompanied this situation of involuntary servitude at great psychological and financial detriment.

159.    At the time that Defendants made the foregoing misrepresentations, material omissions of fact, and promises to the Plaintiff, they had no intention of carrying out such promises and knew that their promises were false.

160.    As the direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer substantial lost wages and severe pain and suffering, including emotional distress, humiliation, and embarrassment.

161.    Plaintiff is therefore entitled to recover damages in an amount to be determined at trial.

## EIGHTEENTH CLAIM FOR RELIEF

### Breach of Contract

### (Against Both Defendants)

162.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

163.    Plaintiff and Defendants entered into an oral agreement, whereby Plaintiff agreed to work for Defendants, and Defendants agreed to pay Plaintiff 5000 rubles (approximately $75) per day, among other promises.

164.    Plaintiff adequately performed her obligations under the oral agreement.

165.    Defendants breached the terms of the Parties' oral contract.

166.    Plaintiff is therefore entitled to recover damages in an amount to be determined at trial.

## NINETEENTH CLAIM FOR RELIEF

### Breach of Contract

### (Against Defendant Suleymanov)

167.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

168.    Plaintiff and Defendant Suleymanov entered into an oral agreement, whereby Plaintiff agreed to perform additional housework for Defendant Suleymanov, and Defendant Suleymanov agreed to pay Plaintiff $500 in U.S. Dollars.

169.    Plaintiff adequately performed her obligations under the oral agreement.

170.    Defendants breached the terms of the Parties' oral contract.

171.    Plaintiff is therefore entitled to recover damages in an amount to be determined at trial.

## TWENTIETH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

### (Against Defendant Suleymanov)

172.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

173.    Defendants acted intentionally and in an outrageous or intolerable manner to intentionally inflict emotional injury on Ms. Doe by trafficking Ms. Doe from Russia to the United States, monitoring all of her movements and phone conversations, refusing to pay her a decent wage, regularly insulting her, and physically, sexually, and emotionally abusing her.

174.    Defendants' conduct was extreme, outrageous, and intolerable in a way that would offend the generally accepted standards of decency and morality.

175.     Defendants' conduct caused Ms. Doe severe emotional distress. Defendants' conduct caused Ms. Doe to be afraid of Defendants, to be afraid for her physical safety, and to feel humiliated.

176.     Defendants committed these acts maliciously and oppressively, with the wrongful intention of causing harm to Ms. Doe, and in conscious disregard of Ms. Doe's rights.

177.     As a direct and proximate result of Defendants' intentional actions, Ms. Doe has suffered and continues to suffer severe mental distress, emotional injuries, humiliation, embarrassment, and economic loss.

178.     Ms. Doe is entitled to recover damages in an amount to be determined at trial, including punitive damages, attorneys' fees, and the costs of this action.

## TWENTY-FIRST CLAIM FOR RELIEF

### Battery

### (Against Defendant Suleymanov)

179.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

180.     Defendant Suleymanov intentionally, offensively and wrongfully touched Ms. Doe without her consent on or around January 23, 2016, when Defendant Suleymanov forced Ms. Doe to have sex with him against her will.

181.     This contact was wrongful and offensive in that a reasonable person would find it offensive to their personal dignity, and resulted in physical harm to Ms. Doe's body.

182.     Defendant Suleymanov intentionally, offensively and wrongfully touched Ms. Doe without her consent on multiple occasions from late January 2016 to mid-March 2016 when

he forced Ms. Doe into sexual contact through coercion and threats, and when he intentionally grabbed Ms. Doe and tried to force her into having unwanted sexual contact.

183.    This contact was wrongful and offensive in that a reasonable person would find it offensive to their personal dignity, and resulted in physical harm to Ms. Doe's body.

184.    Defendant Suleymanov's actions were intentional in that he had personal knowledge to a substantial certainty that harmful or offensive contact would result from his actions.

185.    Defendant Suleymanov's actions were committed with a conscious and deliberate disregard of the interests of others such that his conduct may be called willful or wanton.

186.    As the direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer substantial lost wages and severe pain and suffering, including emotional distress, humiliation, and embarrassment.

187.    Plaintiff is therefore entitled to recover damages in an amount to be determined at trial.

## TWENTY-SECOND CLAIM FOR RELIEF

### False Imprisonment

### (Against Defendant Suleymanov)

188.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

189.    Defendant Suleymanov knowingly and intentionally confined Ms. Doe within Defendants' home by restricting her ability to leave the home and by psychological, physical, and verbal abuse so as to deprive Plaintiff of her freedom of movement.

190.    Ms. Doe was conscious of being confined and did not consent to her confinement.

191.     As a consequence of Defendant Suleymanov's threats and constant verbal abuse, Ms. Doe was confined to Defendants' home, and there was no reasonable means of escape that Ms. Doe could reasonably discover.

192.     Defendant Suleymanov confined Plaintiff knowingly and willfully and with malice and reckless disregard for her rights.

193.     As the direct and proximate result of Defendant Suleymanov's conduct, Ms. Doe has suffered and continues to suffer substantial lost wages and severe pain and suffering, including emotional distress, humiliation, and embarrassment.

194.     Ms. Doe is therefore entitled to recover damages in an amount to be determined at trial.

## TWENTY-THIRD CLAIM FOR RELIEF

### Hostile Work Environment in Violation of
### New York Human Rights Law N.Y. Exec. Law § 296-b

### (Against Defendant Suleymanov)

195.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

196.     Under N.Y. Executive Law § 296-b(2)(a) it is unlawful for an employer of a domestic worker to "[e]ngage in unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature to a domestic worker when: (i) submission to such conduct is made either explicitly or implicitly a term or condition of an individuals' employment; (ii) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or (iii) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, or offensive working environment."

197.    It is further unlawful under N.Y. Executive Law § 296-b(2)(b) for an employer to "[s]ubject a domestic worker to unwelcome harassment based on gender . . . where such harassment has the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating hostile or offensive working environment."

198.    On or around January 23, 2016, Defendant Suleymanov subjected Plaintiff to unwanted and unwelcome sexual contact when he forced her to have sex with him, without her invitation or consent.

199.    On or around January 23, 2016, Defendant Suleymanov subjected Plaintiff to unwanted and unwelcome sexual contact when he forced her to have sex with him against her will.

200.    From on or around December 2015 to March 12, 2016, Defendant Suleymanov subjected Ms. Doe to unwanted and unwelcome offensive, vulgar, and sexually explicit comments, and continued unwanted and unwelcome sexual contact.

201.    Defendant Suleymanov made it explicitly and/or impliedly a term or condition of Ms. Doe's employment that she submit to his sexual advances and not complain or tell anyone about his actions, and threatened to fire Plaintiff and remove her from the residence if she did not submit to his sexual advances.

202.    Defendant Suleymanov's actions unreasonably interfered with Ms. Doe's work performance by creating an intimidating, hostile, and offensive working environment.

203.    As the direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost wages and pain and suffering, including emotional distress, humiliation, and embarrassment.

204.    As a result, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, including lost wages and emotional distress damages, together with such other and further relief as is just and proper.

## TWENTY-FOURTH CLAIM FOR RELIEF

### Retaliation in Violation of
### New York Human Rights Law N.Y. Exec. Law § 296

### (Against Both Defendants)

205.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

206.    Under N.Y. Executive Law § 296(7) it is unlawful for "any person engaged in any activity to which this section applies to retaliate . . . against any person because he or she has opposed any practices forbidden under this article . . ."

207.    Defendant Suleymanov ejected Ms. Doe from his residence and had her fired as a result of and in retaliation against Ms. Doe's refusal to submit to his sexual advances.

208.    Defendant Pletin fired Ms. Doe after being made aware that Ms. Doe had been ejected by Defendant Suleymanov as a result of and in retaliation against Ms. Doe's refusal to submit to his sexual advances.

209.    As a result, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, and back pay and front pay including lost wages and such other compensation, benefits and entitlements which Plaintiff would have received from the date of her unlawful discharge to the date of judgment, together with such other and further relief as is just and proper.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief, in amounts to be determined at trial, on each count detailed above:

1.  Declaring that Defendants violated the Fair Labor Standards Act, the New York Labor Law, New York Human Rights Law, the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, and the common law;

2.  Awarding Plaintiff restitution in the full amount of her losses, punitive and compensatory damages for pain and suffering, attorneys' fees and costs, and such other relief as the Court may deem just and proper pursuant to the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 18 U.S.C. § 1595;

3.  Awarding Plaintiff unpaid minimum wages in an amount equal to the federal minimum wage she should have been paid, liquidated damages, and attorneys' fees, and costs, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*;

4.  Awarding Plaintiff unpaid wages, including promised wages, minimum wages, overtime pay, and spread-of-hours pay, plus liquidated damages, interest, attorneys' fees and costs, pursuant to New York Labor Law § 190, *et seq.*;

5.  Awarding Plaintiff statutory damages of up to $10,000 for Defendants' failure to provide Plaintiff with required notices and wage statements pursuant to New York Labor Law §§ 195(1) and 195(3);

6.  Awarding Plaintiff compensatory damages reasonably related to Defendants' conduct pursuant to 18 U.S.C. §§ 1584, 1589, 1590, 1593A, 1594 and 1595, and N.Y. Exec. Law § 296;

7.   Awarding Plaintiff damages due to unjust enrichment and/or (in the alternative) quantum meruit, fraud, breach of contract (two counts), intentional infliction of emotional distress, battery, and false imprisonment;

8.   Awarding Plaintiff pre-judgment and post-judgment interest as allowed by law; and

9.   Awarding Plaintiff other legal and equitable relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated:   New York, New York
          December 6, 2018

          Respectfully submitted,

          __/s/ Linda H. Martin_____

          FRESHFIELDS BRUCKHAUS DERINGER US LLP

          Linda H. Martin
          Shannon M. Leitner
          Marissa M. Yu
          601 Lexington Ave., 31st Floor
          New York, NY 10022
          Telephone: (212) 277-4000
          linda.martin@freshfields.com
          shannon.leitner@freshfields.com
          marissa.yu@freshfields.com


          **THE LEGAL AID SOCIETY**
          Adriene Holder, *Attorney-in-Charge, Civil Practice*
          Karen Cacace, *Director, Employment Law Unit*
          Sumani Lanka, *Staff Attorney, Employment Law Unit*
          199 Water Street, 3rd Floor
          New York, New York 10038
          Telephone: (212) 577-3300

          *Attorneys for Plaintiff*